1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                       SOUTHERN DISTRICT OF CALIFORNIA

8

9   CHRISTOPHER JONES,                    Case No.:  23-cv-529-WQH-VET

                             Plaintiff,
10                                          **ORDER**

11  v.

12  COUNTY OF SAN DIEGO and
    ALTERNATE PUBLIC
13  DEFENDERS OFFICE,

14                            Defendants.

15  HAYES, Judge:

16        The matter before the Court is the Motion to Dismiss First Amended Complaint

17  Without Leave to Amend ("Motion to Dismiss") (ECF No. 30) filed by Defendants County

18  of San Diego and Alternate Public Defender's Office (collectively, the "County").[1]

19  **I.    BACKGROUND**

20        On March 23, 2023, Plaintiff, proceeding pro se, initiated this action by filing a

21  Complaint against Defendants City of San Diego,[2] County of San Diego, and Alternate

22

23

24

25  [1] The Motion to Dismiss states that "[t]he County's Alternate Defender's Office is not a separately suable
    entity. As such, this motion is brought on behalf of both named defendants as the 'County.'" (ECF No. 30
26  at 1 n.1.)

27  [2] The City of San Diego has been dismissed from this case. (*See* ECF No. 11.)

28                                          1

Public Defender's Office ("APD Office"). (ECF No. 1.) Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis, which the Court granted. (*See* ECF Nos. 2, 5.)

On August 11, 2023, the County filed a motion to dismiss. (ECF No. 9.) On February 28, 2024, the Court granted the motion to dismiss and dismissed the Complaint without prejudice. (ECF No. 23 at 21.)

On March 25, 2024, the Court granted Plaintiff's request for an extension of time to amend the Complaint. (ECF No. 28.)

On May 24, 2024, Plaintiff filed the operative First Amended Complaint ("FAC"). (ECF No. 29, FAC.)

On June 14, 2024, the County filed the Motion to Dismiss. (ECF No. 30.)

On July 1, 2024, the Court granted Plaintiff's request for an extension of time to respond to the Motion to Dismiss. (ECF No. 32.)

On August 9, 2024, Plaintiff filed an Opposition to the Motion to Dismiss. (ECF No. 33.)

On August 16, 2024, the County filed a Reply to Plaintiff's Opposition to Motion to Dismiss. (ECF No. 34.)

## II.    ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

In 1995, a jury convicted Plaintiff of second-degree murder following a trial in the San Diego County Superior Court. Plaintiff filed numerous habeas petitions, asserting ineffective assistance of counsel by his appointed counsel, Thomas Kelley ("Kelley"), because Kelley had failed to investigate and present a mental health-based defense at trial. On October 20, 2020, the Honorable Jeffrey T. Miller of the United States District Court for the Southern District of California granted Plaintiff's federal habeas petition and discharged Plaintiff of "all consequences of his second degree murder conviction." (FAC ¶ 6; *see also Jones v. Cate*, Case No. 09-cv-1896-JM-MSB, ECF Nos. 182, 183 (S.D. Cal.).) On February 4, 2021, the San Diego County Superior Court reduced the

second-degree murder conviction to manslaughter. Plaintiff alleges that he "refused to plead, agree or enter into the State Court record such a guilty plea to manslaughter." (FAC ¶ 37.)

Plaintiff brings his claims against each Defendant "in their individual capacities for monetary and punitive damages, and as policy makers in their official capacities for failure to create and establish policy in the absence of any policy to guard against constitutional violations." *Id.* ¶ 4. Plaintiff alleges that "Mr. Kelley violated Plaintiff's Sixth and Fourteenth Amendment Rights by not functioning as the Counsel guaranteed [to Plaintiff] by the Sixth Amendment, depriving Plaintiff of a fair trial, a trial whose result is reliable." *Id.* ¶ 14. Plaintiff alleges:

> Defendant County of San Diego, by and through the APD Office, had the habit, custom and practice, through the ongoing actions of Counsel Kelley during the many years of his employment and/or term with the APD Office, of: … [f]ailing to ensure and establish procedures, but systematically failed to have systems or established policies in place, and to train and supervise it[s] Attorney[s], to require full and prompt investigations of probative evidence to the defense.… It similarly failed to ensure that Trial Attorney[s] knew and learned of all important information for a case: to provide the means, information and training to determine whether evidence is reliable, including the defendant's background, education, mental and emotional stability and the like will be relevant…. Throughout this period, 1995 to the present, the APDO and County had no established policies, systems, training or supervision for meeting constitutional standards. All of the customs, policies and failures occurred wit[h] "deliberate indifference" to the rights of criminal defendants, including Plaintiff.

*Id.* ¶¶ 18–21. Plaintiff alleges that the APD Office failed to "train subordinates and as policy makers for the APDO made a deliberate choice to allow subordinates to continue in their customs and practices rather than implement procedural safeguard[s] to prevent constitutional violations." *Id.* ¶ 28.

Plaintiff alleges as an example another Southern District of California case where a defendant "suffer[ed] loss of his liberty for approximately 20 years" as a "direct result of

3

18 separate incidents caused by numerous County employees for over 18 years," including failures in "investigative functions." *See id.* ¶¶ 34–36. Plaintiff alleges that the APD Office "failed to ensure that trial attorneys learn and know of all important information for a case when promptly conducting investigations into their client[s'] backgrounds and mental histories, amongst other duties of care to clients." *Id.* ¶ 30. Plaintiff alleges that "[t]hese customs, policy, practices and failures were so closely related to the deprivation of Plaintiff's rights as to be a moving force that caused his 1995 conviction." *Id.* ¶ 32. Plaintiff alleges that "[h]ad Kelley of the APD Office been properly trained and supervised, and had there been proper systems, safeguards, and policies in place, Kelley would have known that his habit and custom of doing things is contrary to his constitutional obligation, and his duty to investigate his client's background and mental history would have been routine practice." *Id.*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violation of his Sixth and Fourteenth Amendment rights.

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

A court ruling on a Rule 12(b)(6) motion to dismiss "must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment" if it considers evidence outside the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## IV.  DISCUSSION

The County moves to dismiss the Complaint on the grounds that Plaintiff's claims are barred by the statute of limitations, Plaintiff has failed to state a claim for *Monell* liability, and Plaintiff is not entitled to damages.

### A.    Statute of Limitations

#### 1.    Plaintiff's Claims are Untimely

The County contends that a two-year statute of limitations applies to 42 U.S.C. § 1983 causes of action and bars Plaintiff's claims. The County contends that Plaintiff's claims in this action accrued on October 19, 2020, the date Plaintiff's habeas petition was

granted on ineffective assistance of counsel grounds, because this is the date "Plaintiff knew of the existence and source of his claimed injury." (ECF No. 34 at 2.)

Plaintiff contends that he filed this suit in a timely manner because his cause of action did not accrue until February 4, 2021—the date that the San Diego County Superior Court resentenced him. Plaintiff contends that his filing of a complaint on June 21, 2021, in a related prior action fell within the statute of limitations.

"A claim may be dismissed [for failure to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

"Because § 1983 has no specific statute of limitations, federal courts borrow state statute of limitations for personal injury actions…. California's statute of limitations for personal injury actions is two years." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (citations omitted); *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) ("When, as here, a federal civil rights statute does not include its own statute of limitations, federal courts borrow the forum state's limitations period for personal injury torts."). "Although California law determines the length of the limitations period, federal law determines when a civil rights claim accrues[,] ... [or] the date on which the statute of limitations begins to run." *Lukovsky*, 535 F.3d at 1048. Under federal law, a claim accrues "when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury [that is the basis of the action] and the cause of that injury." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *Lukovsky*, 535 F.3d at 1050).

"To bring a § 1983 claim against a local government entity, a plaintiff must plead that a municipality's policy or custom caused a violation of the plaintiff's constitutional rights." *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 992–93 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). In a *Monell* claim, the cause of the plaintiff's injuries is the government entity's wrongful policy. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Accordingly, a § 1983 claim against a local government entity accrues "when the plaintiff knew or in the exercise of reasonable diligence should have known" of his or her injury and the involvement of the government entity's alleged wrongful policy in causing the injury. *Bonneau*, 666 F.3d at 581 (quoting *Lukovsky*, 535 F.3d at 1050); *see Wilson v. Hays*, 228 F. Supp. 3d 1100, 1112 (S.D. Cal. 2017).

Plaintiff contends that his cause of action did not accrue until February 4, 2021—the date that the San Diego County Superior Court resentenced him. The Supreme Court has held that a § 1983 claim arising from an unconstitutional conviction or sentence accrues when "the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). As relevant here, on October 19, 2020, the Honorable Jeffrey T. Miller issued an order granting Plaintiff's habeas corpus petition and "discharg[ing Plaintiff] of all consequences of his second degree murder conviction" on the grounds that he "demonstrated that his trial counsel's failure to conduct an adequate investigation or present a mental-health based defense, was unreasonable." (FAC, Exh. A at 30, 32); *Jones v. Cate*, Case No. 09-cv-1896-JM-MSB, ECF No. 182 (S.D. Cal. Oct. 19, 2020).) In the present case, Plaintiff alleges that he was injured by Kelley's failure to investigate and present a mental health-based defense at his trial and that the APD Office "failed to ensure that trial attorneys learn and know of all important information for a case when promptly conducting investigations into their client[s'] backgrounds and mental histories, amongst other duties of care to clients." (FAC

¶¶ 13, 30.) Thus, when Judge Miller granted his habeas corpus petition, Plaintiff knew or reasonably should have known of his injury that is the basis of this action and the involvement of the County's alleged wrongful policy that caused the injury. Plaintiff's contention that his claims did not accrue until the date of his resentencing over three months later is unavailing. In any event, even if Plaintiff's claims accrued on the date of his resentencing—February 4, 2021—his filing of the Complaint on March 23, 2023, would nevertheless exceed the two-year statute of limitations and be untimely.

Plaintiff also contends that the present action is timely because he previously filed "his original Civil Complaint on June 21, 2021, way within the applicable statutory time-frame" in a related prior action. (ECF No. 33 at 3.) Plaintiff alleges in the FAC that on May 3, 2021, he "originally filed with the Court his Civil Rights Complaint against Defendants County of San Diego, Thomas Kelley, City of El Cajon, and the Alternate Public Defender's Office" ("May 2021 complaint"). (FAC ¶ 8.) The May 2021 complaint asserted claims against the defendants for Kelley's conduct and vicarious liability for Kelley's actions. *Jones v. County of San Diego*, Case No. 21-cv-847-WQH-WVG, ECF No. 1 (S.D. Cal. May 3, 2021) ("Related Action"). Plaintiff alleges in the present FAC that on June 2, 2021, he filed with the Court an application to "voluntarily withdraw[] the complaint [in the Related Action] to refile his First Amended Complaint at a later date." (FAC ¶ 9; *see also Jones v. County of San Diego*, Case No. 21-cv-847-WQH-WVG, ECF No. 6 (S.D. Cal. June 2, 2021). Plaintiff alleges that "[s]ince [he] voluntarily requested to have his original Complaint withdrawn, Plaintiff has since lodged, filed and exhausted with those entities, San Diego City and County, and APD-Office, his complaints with those entities['] claims process." (FAC ¶ 10.)

On September 21, 2022, Plaintiff filed an amended complaint in the Related Action, filing a complaint nearly identical to the original Complaint filed in this case. *Compare Jones v. County of San Diego*, Case No. 21-cv-847-WQH-WVG, ECF No. 8 (S.D. Cal.

1  Sept. 21, 2022), *with* (ECF No. 1). On September 29, 2022, the Court ordered the Related

2  Action remain closed because Federal Rule of Civil Procedure 41 does not allow Plaintiff

3  to dismiss a case and then attempt to reopen it "when he decides he is ready to litigate his

4  claims." *Jones v. County of San Diego*, Case No. 21-cv-847-WQH-WVG, ECF No. 11 at

5  2 (S.D. Cal. Sept. 29, 2022) (citations omitted). The Court stated that if Plaintiff wished to

6  pursue the claims in the amended complaint, he had to complete an initial case form and a

7  new case would be opened. *Id.* Plaintiff filed the Complaint in this action on March 23,

8  2023.

9  Plaintiff provides no authority to support his contention that his filing of the May

10  2021 complaint in the prior Related Action—which he subsequently voluntarily

11  dismissed—renders the present action timely. Pursuant to Federal Rule of Civil Procedure

12  3, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3;

13  *see Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002) ("[A] § 1983 action is

14  commenced in federal district court for purposes of the statute of limitations when the

15  complaint is filed."). In other words, the present case was commenced on the date Plaintiff

16  filed the original Complaint—March 23, 2023. (ECF No. 1.) The date Plaintiff filed the

17  May 2021 complaint in the prior Related Action bears no relevance. *See City of S.*

18  *Pasadena v. Mineta*, 284 F.3d 1154, 1157–58 (9th Cir. 2002) (explaining that a voluntary

19  dismissal without prejudice "leaves the situation as if the action never had been filed" and

20  renders "any future lawsuit based on the same claim … an entirely new lawsuit unrelated

21  to the earlier (dismissed) action" (citations omitted)). While Federal Rule of Civil

22  Procedure 15 provides that "[a]n amendment to a pleading relates back to the date of the

23  original pleading when … the law that provides the applicable statute of limitations allows

24  relation back," Fed. R. Civ. P. 15(c)(1)(A), district courts within the Ninth Circuit have

25  held that complaints filed in separate cases do not "relate back" to complaints in prior cases.

26  *See Calloway v. Rangel*, No. 1:12-cv-00193-GSA-PC, 2014 WL 11696681, at *1 (E.D.

27

28

23-cv-529-WQH-VET

Cal. Oct. 30, 2014) (dismissing the plaintiff's § 1983 action as barred by the statute of limitations where "the present case was opened as a new and separate case" and "there [was] no authority supporting Plaintiff's argument that the present case relates back to his prior case for purposes of the statute of limitations"); *Nickelson v. United States*, No. 14-3654 (AJW), 2016 WL 6495358, at *2 (C.D. Cal. Nov. 2, 2016) ("Nor does a complaint in a subsequent case relate back to a complaint filed in a previously dismissed case." (citing *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006))). The date Plaintiff filed the May 2021 complaint in the Related Action is thus immaterial to the statute of limitations analysis for the present action.

In sum, Plaintiff's § 1983 cause of action accrued and the statute of limitations began to run on October 19, 2020, when Judge Miller granted Plaintiff's habeas corpus petition. Plaintiff filed the present case on March 23, 2023. Thus, Plaintiff's action is untimely, unless Plaintiff is entitled to tolling of the two-year statute of limitations.

## 2.    Equitable Tolling

The County contends that Plaintiff is not entitled to equitable tolling because his failure to timely file the Complaint was unreasonable considering that Plaintiff had already filed the same complaint in September 2022; his alleged mental disabilities do not meet the standard for equitable relief in a civil case and given his current capabilities listed in the record; and any alleged confusion about the law or time requirements, specifically as to exhaustion of state claims, is not a proper basis for equitable tolling.

Plaintiff does not explicitly address whether tolling applies in this case. In liberally construing the FAC, the Court considers whether Plaintiff has adequately alleged application of equitable tolling.

California state law applies to determine whether the statute of limitations for Plaintiff's § 1983 claims was tolled. *See Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 485–86 (1980); *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir.

10

2003). Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) the defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Cent. Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1336 (Ct. App. 1994); *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978).

Plaintiff has not pled any facts that would explain what "forces beyond his control" prevented him from filing this action earlier—specifically such forces that occurred between the date the statute of limitations had run and the date he filed the Complaint in March 2023. Instead, as noted above, Plaintiff alleges that he filed a complaint asserting the same claims alleged in this action when he filed the May 2021 complaint and the September 2022 amended complaint in the dismissed Related Action. Plaintiff did not file the present Complaint until March 23, 2023. Plaintiff has not adequately alleged the conditions required for equitable tolling under California law. Plaintiff has not alleged or asserted any other basis to toll the statute of limitations.

Even if Plaintiff had asserted tolling based upon mental disabilities as the County suggests, *see* ECF No. 30-1 at 16, Plaintiff has not adequately alleged incapacity as provided under California Civil Procedure Code Section 352(a) because he has not alleged that he is "incapable of caring for his property or transacting business or understanding the nature or effects of his acts." *Alcott Rehab. Hosp. v. Superior Ct.*, 93 Cal. App. 4th 94, 101 (2001) (providing that in order to invoke Section 352(a), a plaintiff must show that he is "incapable of caring for his property or transacting business or understanding the nature or effects of his acts"); Cal. Civ. Proc. Code § 352(a) (tolling the limitation period during the "time of disability"); *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011) (rejecting the plaintiff's equitable tolling based on a mental disability argument at the motion to dismiss stage "in light of Johnson's proven ability to advance and protect his

legal interests" in initiating and participating in other lawsuits); *see Est. of Stern v. Tuscan Retreat, Inc.*, 725 Fed. App'x 518, 521 (9th Cir. 2018) (stating that the key inquiry is whether the plaintiff was "sufficiently aware of the nature or effects of [his] acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action" (quoting *Hsu v. Mt. Zion Hosp.*, 259 Cal. App. 2d 562, 575 (Ct. App. 1968))).

Similarly, Plaintiff's § 1983 claims were not tolled during the period that he "lodged, filed and exhausted … his complaints" with the "claims process[es]" for "San Diego City and County, and APD-Office" (FAC ¶ 10), as he was not required to exhaust his claims prior to the filing of the Complaint because he was not a prisoner at the time he filed the Complaint. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Talamantes v. Leyva*, 575 F.3d 1021, 1023 (9th Cir. 2009) ("[A] person not 'incarcerated or detained' in this manner at the time the action is filed is not a 'prisoner' for the purposes of the statute, and therefore, not subject to the exhaustion requirement."); *Muhammad v. Hill*, No. CV 17-01137-VBF (PLA), 2017 WL 6520635, at *6 (C.D. Cal. Oct. 24, 2017) (finding that the plaintiff was "not entitled to equitable tolling for his federal civil rights claims" during the time he pursued "a Government Tort claim with the Los Angeles County Sheriff's Department" because he was "not a prisoner at the time" and thus not subject to an exhaustion requirement), *adopted by* No. CV 17-01137-VBF (PLA), 2017 WL 6512216 (C.D. Cal. Dec. 18, 2017).[3]

---

[3] The Court acknowledges that "[v]arious California and federal courts diverge on the question of whether filing a government claim tolls the time for filing a § 1983 claim." *Medeiros v. City of Palo Alto*, No. 17-CV-05913-LHK, 2019 WL 2568861, at *6 (N.D. Cal. June 21, 2019) (citing *McMahon v. Albany Unified Sch. Dist.*, 104 Cal. App. 4th 1275, 1292 (Ct. App. 2002); *Lucchesi*, 353 F.3d at 693, 696). In any event, even if Plaintiff's § 1983 claims were tolled during the period that his California Tort Claims Act

1    Accordingly, it is clear from the face of the FAC that Plaintiff's § 1983 claims are

2    barred by the statute of limitations.

3    **B.    *Monell* Liability**

4    The County contends that Plaintiff does not allege a custom or practice as required

5    to show *Monell* liability because he has only alleged a singular incident. The County

6    contends that the other case Plaintiff cites is insufficient as it was filed nearly a year after

7    Plaintiff's habeas petition was granted, and thus could not have provided the County with

8    notice of the alleged constitutional violations at the time of the events alleged in the FAC.

9    Plaintiff's Opposition brief does not refute the County's contentions concerning his

10    failure to allege a custom or practice.[4] Instead, Plaintiff devotes much of his Opposition

11

12    _____

13    ("CTCA") claims were pending, his § 1983 claims would nevertheless have been untimely. The Court

14    grants the County's request to take judicial notice of Plaintiff's claim against the County (ECF No. 30-4 at 10–15), the County's Notice of Rejection of Claim (ECF No. 30-4 at 16–19), Plaintiff's request to file

15    a late claim (ECF No. 30-4 at 20–22), and the County's Notice of Rejection of Claim (ECF No. 30-4 at 23–25). (ECF No. 30-3 at 3.) *See Velez v. Tehama Cnty. Sheriff's Dep't*, No. 17-960 WBS KJN, 2018 WL

16    746471, at *1 n.1 (E.D. Cal. Feb. 6, 2018) (taking judicial notice of the plaintiffs' CTCA claims "because judicial notice may be taken of records of state administrative and judicial agencies, including

17    governmental claim submissions and responses" (citing *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d

18    1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010))). These documents

19    reveal that Plaintiff first filed his CTCA claims with the County on June 21, 2021, and the County's final

20    notice of rejection of his claims was issued on October 26, 2021. Thus, the statute of limitations for Plaintiff's § 1983 claims would have been tolled for, at most, 128 days during the pendency of his CTCA

21    claims. Plaintiff, however, did not file the Complaint in this case until 155 days after the statute of limitations expired on October 19, 2022. In other words, Plaintiff's Complaint would have been untimely

22    even if he were eligible for a 128-day tolling period during the time his CTCA claims were pending.

23    [4] The County contends in its Reply brief that "[b]ecause Plaintiff did not address his *Monell* claim in his

24    opposition, this Court should find that Plaintiff conceded that the *Monell* claim should be dismissed." (ECF No. 34 at 4.) Given Plaintiff's pro se status, the Court declines to find that Plaintiff's omission

25    constitutes an implicit concession to the dismissal of his *Monell* claims. *See Prado v. Gastelo*, No. 2:21-cv-05057-JAK (AFM), 2022 WL 20581969, at *5 (C.D. Cal. Mar. 24, 2022) (declining to find that

26    a pro se plaintiff had abandoned his excessive force claim despite his "fail[ure] to address the grounds raised in the Motion" in his opposition brief in part because "a document filed pro se is 'to be liberally

27    construed'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

28

1   brief to contending that he can assert a claim for "legal malpractice" against Kelley, who

2   is not a defendant in this action. (*See* ECF No. 33 at 4–6.) Plaintiff contends that "he does

3   in fact have a meritorious claim against Attorney Kelley when filed in the correct

4   jurisdiction." *Id.* at 6.

5                    **1.    Plaintiff Does Not Sufficiently Allege *Monell* Liability**

6          42 U.S.C. § 1983 "creates a private right of action against individuals who, acting

7   under color of state law, violate federal constitutional or statutory rights." *Devereaux v.*

8   *Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001); *see* 42 U.S.C. § 1983 (providing a cause of

9   action against "[e]very person who, under color of any statute, ordinance, regulation,

10  custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the

11  deprivation of any rights, privileges, or immunities secured by the Constitution and

12  laws ...."). "The purpose of § 1983 is to deter state actors from using the badge of their

13  authority to deprive individuals of their federally guaranteed rights and to provide relief to

14  victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Section 1983 "is

15  not itself a source of substantive rights, but merely provides a method for vindicating

16  federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)

17  (quotations and citations omitted). A government entity may not be held vicariously liable

18  for the unconstitutional acts of its employees under a theory of respondeat superior in a

19  § 1983 claim. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir.

20  2012). "A government entity may not be held liable under 42 U.S.C. § 1983, unless a

21  policy, practice, or custom of the entity can be shown to be a moving force behind a

22  violation of constitutional rights." *Dougherty*, 654 F.3d at 900 (citing *Monell*, 436 U.S. at

23  694). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent

24  and well settled city policy.' … Liability for improper custom may not be predicated on

25  isolated or sporadic incidents; it must be founded upon practices of sufficient duration,

26  frequency and consistency that the conduct has become a traditional method of carrying

27

28

out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).

To allege a *Monell* claim based upon a failure to train theory, a plaintiff must show that the failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alterations in original) (citation omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (alterations in original) (citation omitted). It is only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Consequently, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

The Court of Appeals for the Ninth Circuit had historically held that a plaintiff alleging a *Monell* claim need only plead "a bare allegation that government officials' conduct conformed to some unidentified government policy or custom." *Hernandez*, 666 F.3d at 637. However, following *Iqbal* and *Twombly*, the Court of Appeals held that *Monell* claims must contain sufficient allegations to give fair notice to the opposing party and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In this case, Plaintiff alleges that the County failed to establish policies to meet constitutional standards, train and supervise attorneys, require "full and prompt investigations of probative evidence to the defense," and "ensure that Trial Attorney[s]

knew and learned of all important information for a case." (FAC ¶¶ 19–20.) Plaintiff alleges that "Mr. Kelley's own words, make[] clear that the APD Office was, as a matter of policy, deliberately indifferent to the constitutional rights of defendants in serious felony cases long before Plaintiff was tried and convicted." *Id.* ¶ 27. Plaintiff cites to *Alter ex rel. Alter v. County of San Diego*, 635 F. Supp. 3d 1048 (S.D. Cal. 2022), to allege that his experience was not an "isolated or sporadic incident" and to support his allegation that the County had actual knowledge of the alleged constitutional violations and therefore maintained a policy of inaction. *Id.* ¶¶ 34–36. The *Alter* plaintiff alleged that when his prison term concluded, he was "erroneously committed" to a state hospital as a "mentally disordered offender" ("MDO"). 635 F. Supp. 3d at 1052. The plaintiff alleged that the County "had a pervasive practice and custom of failing to ensure that [the County's] attorneys who were assigned to represent MDO clients review the requisite MDO statutes ... to determine whether their clients were eligible for involuntary commitment under the MDO law." *Id.* at 1058. The plaintiff in *Alter* alleged a County custom or practice of attorneys not checking whether their client's conviction fell within the MDO statute "in preparing for MDO hearings." *Id.* at 1059. Here, Plaintiff alleges the County failed to train or establish a policy or custom relating to attorney investigations, specifically as the investigation relates to a mental-health defense at trial. Plaintiff's *Monell* claim is too dissimilar from the alleged *Monell* conduct in *Alter* to show the County's actual knowledge of the alleged constitutional violations. *Alter* does not adequately support Plaintiff's assertion that he sufficiently alleged a "persistent and widespread" custom or practice. *Monell*, 436 U.S. at 691. Moreover, the complaint in *Alter* was filed on September 30, 2021, and the *Alter* decision ruling on the motion to dismiss was issued on October 18, 2022. *Id.* at 1051. The *Alter* complaint and motion to dismiss ruling occurred well after Plaintiff's habeas petition was granted and the events of the present case. The County could not have had actual or constructive notice of the facts alleged in *Alter* at the time of the events alleged in this case.

Besides referring to *Alter*, Plaintiff does not provide nonconclusory allegations that any custom, policy, or inaction was "so 'persistent and widespread' that it constitutes a 'permanent and well settled [County] policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). Plaintiff's allegations add up to no more than an "isolated or sporadic incident[]." *Id.* Accordingly, Plaintiff's allegations are insufficient to allege a claim for *Monell* liability for improper custom, practice, or failure to train. *See Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021).

### 2. Plaintiff's Allegations Against Kelley Cannot Support His *Monell* Claims Against the County

Plaintiff contends that he is "entitled to recover damages from Attorney Kelley" and that the elements of a legal malpractice action against Kelley "are or can be easily met." (ECF No. 33 at 5.) Plaintiff contends that "he does in fact have a meritorious claim against Attorney Kelley when filed in the correct jurisdiction." *Id.* at 6.

The County contends that "public defenders are generally not state actors for purposes of civil rights actions." (ECF No. 34 at 3.) The County contends that any state-law legal malpractice claim against Kelley is time barred. The County contends that Plaintiff cannot establish his "actual innocence" as would be required for him to bring a civil malpractice action against Kelley. *Id.* at 4.

As the County points out, Kelley "is not a party to this [§ 1983] action" against the County. *Id.* at 3. To the extent Plaintiff intends to assert that the County is vicariously liable for Kelley's actions under § 1983, Plaintiff is foreclosed from relying upon such a theory. As the Court stated above, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) (quoting *Monell*, 436 U.S. at 691); *see Hernandez*, 666 F.3d at 636.

Additionally, as the Court noted when dismissing Plaintiff's claims in the Related Action, "a public defender does not act under color of state law when performing a lawyer's

1    traditional functions as counsel to a defendant in a criminal proceeding." *See Jones v.*

2    *County of San Diego*, Case No. 21-cv-847-WQH-WVG, ECF No. 4 at 4 (S.D. Cal. May

3    10, 2021) (quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). Thus, any claim

4    that Plaintiff attempts to assert against Kelley that "arises from Kelley's alleged conduct

5    while performing the traditional functions of a lawyer as counsel to Plaintiff in a criminal

6    case … is not actionable under § 1983." *Id.* at 5. Instead, "[a]ny claim against Kelley for

7    legal malpractice is governed by California state law and is a claim for which 'there exists

8    no independent basis of federal jurisdiction.'" *Id.* (quoting *Aragon v. Federated Dep't*

9    *Stores, Inc.*, 750 F.2d 1447, 1458 (9th Cir. 1985)). In other words, to the extent Plaintiff

10   intends to base his § 1983 claims against the County upon his allegations of Kelley's

11   purported malpractice, such a theory is futile.[5]

12   **C.    Incarceration-Related Damages**

13   The County contends that Plaintiff is not entitled to damages for his incarceration

14   because "his second-degree murder conviction was reduced to manslaughter, he was

15   re-sentenced to time served, and his parole was terminated." (ECF No. 30-1 at 20.) The

16   County contends that Plaintiff's incarceration was caused by the now-manslaughter

17   conviction instead of the second-degree murder conviction, and he cannot recover any

18   incarceration-related damages pursuant to *Taylor v. County of Pima*, 913 F.3d 930 (9th Cir.

19   2019).

---

[5] In light of the Court's findings above, as well as the fact that Kelley is not a defendant in this action, the Court need not address the County's contention that Plaintiff's prospective legal malpractice claim against Kelley would be time-barred under California Civil Procedure Code Section 340.6(a). The Court similarly does not address the County's contention that Plaintiff cannot "'obtain relief from the judgment of conviction and prove his actual innocence' in a later civil malpractice action." (ECF No. 34 at 4.)

1    In his Opposition brief, Plaintiff "concedes that … he may not recover damages from

2  the County."[6] (ECF No. 33 at 4.) Thus, as Plaintiff acknowledges, even if he had adequately

3  alleged his *Monell* claims, he cannot recover damages related to his incarceration.[7]

4    **D.    Punitive Damages**

5      The County contends that Plaintiff is statutorily barred from recovering punitive

6  damages against the County.

7      In his Opposition brief, Plaintiff "concedes that … he may not recover damages from

8  the County." (ECF No. 33 at 4.) Accordingly, as Plaintiff recognizes, the County cannot

9  be held liable for punitive damages based on the claims raised in the FAC.[8]

10    **E.    Leave to Amend**

11      The County contends that the Court should dismiss Plaintiff's claims with prejudice

12  because "amendment would be futile" and "Plaintiff has failed to cure the deficiencies in

13  the original complaint." (ECF No. 30-1 at 21.) The County contends that, despite

14  previously receiving leave to amend, Plaintiff "offered only a minimally edited amended

---

18  [6] Plaintiff contends that, instead, "[Plaintiff is] in fact entitled to recover damages from Attorney Kelley."

19  *Id.* As previously noted, Kelley is not a defendant in this action. Furthermore, for the reasons discussed

20  above, Plaintiff's malpractice allegations against Kelley cannot support a § 1983 claim against the County.

21  [7] Even if Plaintiff had contended that he could recover damages related to his incarceration, as the Court

22  noted in its prior Order dismissing the Original Complaint, such an argument would be futile. (*See* ECF
     No. 23 at 14–17 ("To the extent that Plaintiff intended to bring his § 1983 claims based upon the 2021
     conviction, such a claim is not permitted as that conviction remains valid and he 'may not state a claim if

23  a judgment in his favor "would necessarily imply the invalidity of his [2021] conviction or sentence."'"
     (quoting *Taylor*, 913 F.3d at 935)).)

24

25  [8] Even if Plaintiff had contended that he could recover punitive damages against the County, as the Court

26  noted in its prior Order dismissing the Original Complaint, such an argument would be meritless. (*See*
     ECF No. 23 at 17 (explaining that, "under California law, a public entity is not liable for punitive

27  damages," and "[p]unitive damages are not available against municipal entities for § 1983 claims" (citing
     Cal. Gov. Code § 818; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981))).)

28                                                                    23-cv-529-WQH-VET

pleading that did not cure any of the fatal defects, in particular, that his claims are too late." *Id.*

Plaintiff requests that the Court "adopt" the ruling in its prior Order wherein it "Dismiss[ed] Plaintiff's Complaint Without Prejudice." (ECF No. 33 at 6.)

Federal Rule of Civil Procedure 15 mandates that the court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In determining whether to allow an amendment, a court considers whether there is "undue delay," "bad faith," "undue prejudice to the opposing party," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Not all of the [*Foman*] factors merit equal weight.... [I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap.*, 316 F.3d at 1052 (citation omitted). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052. "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court …." *Foman*, 371 U.S. at 182. "[I]f the plaintiff has previously amended his complaint, the court's 'discretion to deny leave to amend is particularly broad.'" *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 992 (S.D. Cal. 2023) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)). "[L]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). "[W]e have held that a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Boehm v.*

1    *Shemaria*, 478 F. App'x 457, 457 (9th Cir. 2012). When amendment would be futile, the
2    district court need not grant leave to amend. *See Carrico v. City & County of San*
3    *Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898
4    (9th Cir. 2002). "Amendment is futile when a claim is clearly time barred." *Del Toro v.*
5    *360 P'ship LP*, No. CV 21-1216-JAK (JPR), 2021 WL 5050057, at *1 (C.D. Cal. Nov. 1,
6    2021) (collecting cases).

7              Here, it is clear from the face of the FAC that Plaintiff's *Monell* claims are barred
8    by the statute of limitations. As explained above, Plaintiff's filing of his prior Related
9    Action does not render the present action timely. Nor do the assertions in his Opposition
10   brief regarding Kelley's alleged malpractice support a *Monell* claim against the County or
11   avoid the application of the statute of limitations. Because there is no amendment that can
12   overcome the statute of limitations bar in this matter, granting leave to amend would be
13   futile. *See Doe #1 M.L. v. San Bernardino Sheriff Dep't*, ___ F. Supp. 3d ___, EDCV 24-
14   758-KK-SHKx, 2024 WL 4511208, at *5 (C.D. Cal. Oct. 15, 2024) (finding that
15   amendment would be futile where the plaintiff's claim was barred by the statute of
16   limitations and the plaintiff had "failed to cure the deficiencies" in her *Monell* claim that
17   were "previously identified by the Court"); *Stroud v. County of San Diego*, No. 18-CV-515
18   JLS (MDD), 2020 WL 4500630, at *6 (S.D. Cal. Aug. 5, 2020) (dismissing claims with
19   prejudice where the pro se plaintiff "[could not] possibly cure his claims against [the
20   defendants] as the statute of limitations ha[d] run"); *see also Belanus v. Clark*, 796 F.3d
21   1021, 1027 (9th Cir. 2015) (holding that "[t]he district court properly dismissed [the
22   plaintiff's] complaint without leave to amend for failure to state a cause of action upon
23   which relief could be granted" because "[b]ased on all the materials [the plaintiff]
24   submitted to the district court, it [was] clear that no amendment could overcome the statute
25   of limitations bar.").

26             For the reasons stated above, the Court dismisses the FAC without leave to amend.

27
28

# V.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 30) is granted. The FAC is dismissed without leave to amend. The Clerk of the Court shall issue judgment and close this case.

Dated:  January 21, 2025

*William Q. Hayes*

Hon. William Q. Hayes
United States District Court